| ADVERSARY PROCEEDING COVER SHEET<br>(Instructions on Reverse) | ADVERSARY PROCEEDING NUMBER<br>(Court Use Only) |
|---|---|

| PLAINTIFFS<br>San Juan Bautista Medical Center<br>(Debtor, Case No. 11-2270) | DEFENDANTS<br>Puerto Rico Electric Power Authority |
|---|---|
| ATTORNEYS (Firm Name, Address, and Telephone No.)<br>Conde and Associates<br>254 San Jose St., 5th Floor<br>San Juan, PR 00901 - 787-729-2900 | ATTORNEYS (If Known)<br>Ivan Castro<br>Aldorando & Lopez Bras<br>787-474-5447 |
| PARTY (Check One Box Only)<br>☑ Debtor      ☐ U.S. Trustee/Bankruptcy Admin<br>☐ Creditor   ☐ Other<br>☐ Trustee | PARTY (Check One Box Only)<br>☐ Debtor      ☐ U.S. Trustee/Bankruptcy Admin<br>☑ Creditor   ☐ Other<br>☐ Trustee |

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)
Willful Violation of the Automatic Stay, 11 USC 362; Declaratory Judgment, 28 USC 2201

## NATURE OF SUIT

(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(1) – Recovery of Money/Property**
☐ 11-Recovery of money/property - §542 turnover of property
☐ 12-Recovery of money/property - §547 preference
☐ 13-Recovery of money/property - §548 fraudulent transfer
☐ 14-Recovery of money/property - other

**FRBP 7001(2) – Validity, Priority or Extent of Lien**
☐ 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(3) – Approval of Sale of Property**
☐ 31-Approval of sale of property of estate and of a co-owner - §363(h)

**FRBP 7001(4) – Objection/Revocation of Discharge**
☐ 41-Objection / revocation of discharge – §727(c),(d),(e)

**FRBP 7001(5) – Revocation of Confirmation**
☐ 51-Revocation of confirmation

**FRBP 7001(6) – Dischargeability**
☐ 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims
☐ 62-Dischargeability - §523(a)(2), false pretenses, false representation, actual fraud
☐ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny

**(continued next column)**

**FRBP 7001(6) – Dischargeability (continued)**
☐ 61-Dischargeability - §523(a)(5), domestic support
☐ 68-Dischargeability - §523(a)(6), willful and malicious injury
☐ 63-Dischargeability - §523(a)(8), student loan
☐ 64-Dischargeability - §523(a)(15), divorce or separation obligation
     (other than domestic support)
☐ 65-Dischargeability - other

**FRBP 7001(7) – Injunctive Relief**
☐ 71-Injunctive relief – imposition of stay
☑ 72-Injunctive relief – other

**FRBP 7001(8) Subordination of Claim or Interest**
☐ 81-Subordination of claim or interest

**FRBP 7001(9) Declaratory Relief**
☑ 91-Declaratory judgment

**FRBP 7001(10) Determination of Removed Action**
☐ 01-Determination of removed claim or cause

**Other**
☐ SS-SIPA Case – 15 U.S.C. §§78aaa *et.seq.*
☐ 02-Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case)

| ☐ Check if this case involves a substantive issue of state law | ☐ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| ☐ Check if a jury trial is demanded in complaint | Demand  $400,000 |
| Other Relief Sought | |

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | |
|---|---|---|
| NAME OF DEBTOR<br>San Juan Bautista Medical Center | BANKRUPTCY CASE NO.<br>11-2270 (BKT) | |
| DISTRICT IN WHICH CASE IS PENDING<br>Puerto Rico | DIVISION OFFICE<br>San Juan | NAME OF JUDGE<br>Tester |
| RELATED ADVERSARY PROCEEDING (IF ANY) | | |
| PLAINTIFF | DEFENDANT | ADVERSARY PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY IS PENDING | DIVISION OFFICE | NAME OF JUDGE |

SIGNATURE OF ATTORNEY (OR PLAINTIFF)

| DATE<br>04/26/2011 | PRINT NAME OF ATTORNEY (OR PLAINTIFF)<br>Robert Freedman |
|---|---|

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also must complete and file Form 104, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 104 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs** and **Defendants.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party**. Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.

| | |
|---|---|
| IN RE:<br><br>SAN JUAN BAUTISTA MEDICAL CENTER, CORP.<br><br>Debtor | CASE NO.: 11-02270 (BKT)<br><br>CHAPTER 11 |
| SAN JUAN BAUTISTA MEDICAL CENTER. CORP.<br><br>Plaintiff<br><br>v.<br><br>PUERTO RICO ELECTRIC POWER AUTHORITY<br><br>Defendant | ADV. PRO.: 11-00___(BKT)<br><br>Re: Violation of the Automatic Stay (11 USC § 362); Declaratory Judgment (28 USC § 2201); Damages and Sanctions under 11 USC § 362 and 11 USC § 105. |

## COMPLAINT

**TO THE HONORABLE COURT:**

COMES NOW, San Juan Bautista Medical Center Corp., the Debtor in Possession, and the Debtor hereinafter, through the undersigned attorney, STATES and PRAYS:

*Preliminary Statement*

The key circumstance that precipitated the Debtor's Bankruptcy proceeding was a dispute with the Puerto Rico Electric Power Administration (PREPA) regarding fees for electrical services. As noted in multiple filings in the main Bankruptcy proceeding, the Debtor is the primary user of electrical services for an account in the name of San Juan

Bautista School of Medicine (hereinafter, the School of Medicine). PREPA, the Debtor, and the School of Medicine have been litigating over the amount of arrearage relating to the electrical account in Puerto Rico local court under Case No. ECD 2002-0679(404).

During the course of the Puerto Rico litigation, the School of Medicine consigned $400,000 in funds in the Puerto Rico court. Such funds were funds from the Debtor since the Debtor was the primary consumer of electric services. Evidence of this ownership was provided to PREPA prior to its actions in violation of the stay. Exhibit 1. As of the Petition date, the funds were ***never accepted, withdrawn or collected by PREPA***. Due to PREPA's determination to suspend or terminate electric services to the Hospital and the School of Medicine, the Debtor proceeded to seek the protection of the automatic stay.

Since the bankruptcy petition was filed before PREPA accepted, withdrew or collected the consigned funds, the funds are property of the estate, were included in Debtor's schedules and the Debtor has the legal right to retrieve these funds. The Debtor briefed PREPA of this factual and legal position on numerous occasions. Nevertheless, PREPA, fully aware of the legal consequences of taking action against property of the estate to enforce a pre-petition debt without the authority or permission of this Court, PREPA filed an emergency motion in the Puerto Rico court to withdraw the consigned funds. Exhibit 2.

Even after PREPA moved against property of the estate in violation of the Automatic Stay, the Debtor, prior to filing the instant Complaint, notified PREPA of its intent to file the Complaint and gave PREPA the opportunity to withdraw its motion in local court. (Exhibit 3, Letter of April 19). PREPA declined. PREPA

2

instead filed a belated motion for lifting of the automatic stay against the School of Medicine in order to retrieve these funds.

The Debtor's position is that PREPA's action here is both inexplicable and egregious. Since the very first day of the Bankruptcy proceeding, the Debtor has sought to negotiate with PREPA terms to resolve the long-running dispute and terms to continue the provision of critical electrical service to the Debtor. After meeting with PREPA officials and counsel on March 31, 2011, the Debtor and PREPA reached tentative agreement where the Debtor would pay PREPA a deposit of $650,000 to cover electrical services through April 30, 2011 and then make monthly payments thereafter. To generate funds for the payment of the deposit, the Debtor informed PREPA since day one of its intention to withdraw the $400,000 in funds consigned in local court and use them to pay PREPA part of the post petition deposit.

Despite transmittal of the proposed stipulation and numerous emails and attempts to communicate with PREPA, PREPA never responded to Debtor's offer. Without informing the Debtor that PREPA no longer had any interest in negotiating, PREPA filed its emergency motion to remove the consigned funds in Puerto Rico Court with the intent of applying the funds to the Debtor's pre-petition debt.

Not only is this a central case example of a violation of the automatic stay, this violation is made with the full knowledge of the consequences of its actions. Accordingly, the Debtor brings this action and requests this Court to issue a declaratory judgment against PREPA holding that PREPA's actions to collect the money in Puerto Rico court violate the Automatic Stay, to issue a judgment finding that PREPA has

violated the Automatic Stay, and that this Honorable Court award sanctions under both 11 USC § 362 and 11 USC § 105 for PREPA's deliberate violation of the automatic stay.

## I. JURISDICTION

1. Debtor is currently a Debtor in Chapter 11 Bankruptcy Proceedings before this Court. (Case No. 11-02270).

2. This action seeks to enforce the Automatic Stay, 11 USC § 362, and appropriate relief under FRBP 7001(7) and 7001(9).

3. PREPA has submitted a proof of claim in the Bankruptcy proceedings. (*See* Case No. 11-2270, Claim No. 1).

4. The actions at issue concern PREPA's attempts to take property of the estate in order to pay a pre-petition debt without first receiving the permission of this Court to lift the Automatic Stay.

5. Accordingly, this is a core matter pursuant to 28 USC § 157(b)(2), 11 USC § 362, 28 USC § 2201 and Bankruptcy Rule 7001(7) and (9). This Court therefore has jurisdiction over the matter.

## II. THE PARTIES

6.. The Debtor is one of the leading teaching hospitals in Puerto Rico. The Debtor's location is in Caguas, Puerto Rico. It is registered as a non-profit organization under the laws of Puerto Rico and under 501(c)(3) of the Internal Revenue Code.

7. PREPA, the Defendant here, is the public utility charged with providing the Debtor with electrical services.

## III. FACTS

8. The Debtor submitted its petition for Bankruptcy on March 18, 2011.

9.     The Debtor is a non-profit corporation which was incorporated on October 31, 2001. It is dedicated to the administration of the health facilities commonly known as the Hospital San Juan Bautista de Caguas.

10.     The Debtor's premises, *i.e. the hospital*, are adjacent to the San Juan Bautista School of Medicine.

11.     The Debtor shares its facilities with several other entities including the Department of Health.

12.     All of the entities that are located n the Debtor's premises and the School of Medicine receive electric power through the same account, account number 042-041432-002, which is in the name of the School of Medicine.

13.     The Debtor consumes approximately 85% of the electric power billed monthly to this account. The Debtor has historically been the entity that has provided payment to the invoices for electric power

14.     In 2002 PREPA commenced an action against the School of Medicine in Puerto Rico court over the amount due for electrical services, case no.: ECD 2002-0679 (404).

15.     The Debtor has been a party in the state court proceedings since May 25, 2004 because it is the primary consumer of electrical services and is the party primarily responsible for paying for electrical services.

16.     Over the course of the many years of litigation, the parties, the Debtor, PREPA, and the School of Medicine, have engaged in extensive discovery, motions, and other procedural matters that demonstrate that the parties are well acquainted with each other and with the status of the electrical account at issue.

17. Beginning in December 2009 through to October 2010, the Debtor consigned a total of $400,000 in the Puerto Rico local court to PREPA for payment of electrical services. PREPA never accepted, withdrew or collected the consigned funds.

18. Due to the fact that the School of Medicine was still the only name on the electrical account, the School of Medicine "is the name" for the consignor of the funds, but all parties to the litigation are fully aware that the "consignor in fact" of the $400,000 is the Debtor. (*See* Exhibit 1, Letter of April 13 with supporting evidence of the bank transfers from the Debtor and a copy of the Debtor's schedules, supra).

19. For reasons of its own, PREPA never accepted the consigned funds and informed the School of Medicine and the Debtor its intention to terminate the electric services.

20. On March 18, 2011 the Hospital filed its bankruptcy petition. As of the petition date, March 18, 2011, PREPA still had not accepted, withdrew or collected the funds.

*Negotiations Between the Parties*

21. In order to protect its patients and stay operational, the Debtor had to secure electrical service.

22. Accordingly, the Debtor immediately notified this Court about the issue of electrical service for both the Debtor and the School of Medicine being provided through one account. (*See* Debtor's Emergency Motion to Extend the Automatic

Stay to the School of Medicine in Order to Prevent the Termination of Electrical Services, Case No. 11-2270, Dkt. No. 8).

23.  In order to prevent PREPA from terminating electrical service to the School of Medicine, and by extension the Debtor, the Debtor requested that this Court stay any termination pending a meeting with PREPA. (*See* Case No. 11-2270, Dkt. No. 8).

24.  On March 31, 2011, the Debtor met with representatives and counsel from PREPA.

25.  In response to the meeting, PREPA filed a motion to this Court instructing this Court that the due to the negotiations between the parties and its understanding of the Automatic Stay, that PREPA would not terminate electrical service. (*See* Case No. 11-2270, Dkt. No. 33).

26.  In response, this Court found the Debtor's request for an extension of the stay moot because of PREPA's stated position. (*See* Case No. 11-2270, Order of April 8, 2011, Dkt. No. 38).

27.  Although Debtor had pledged a deposit of $600,000 in its § 366 motion to provided adequate protection to PREPA, (*see* Case No., 11-2270, Dkt. No. 9), the Debtor after the March 31, 2011 negotiations with PREPA agreed to pay PREPA $650,000 for electrical services from the petition date through to April 30, 2011. From May 1, 2011 forward, the Debtor would pay PREPA the regular monthly bill– an amount between $229,000 to $250,000 per month.[1]

---

[1] The Debtor here discloses the terms of negotiations in full compliance with Federal Rule of Evidence 408. The Debtor is not using the existence of the negotiations to prove liability of a claim or invalidity of a defense. Rather, since PREPA has used the existence of the negotiations to request that this Court moot Debtor's request to extend the stay and is now using that order of mootness to act against estate property, the Debtor

28. During the meeting, the Debtor notified PREPA that $400,000 of the proposed $650,000 would come from the consigned funds in Puerto Rico court.

29. On April 1, 2011, the very next day after the meeting, the Debtor sent PREPA a draft of the joint stipulation. .

30. PREPA did not respond to the proposed stipulation.

31. On April 13, 2011 PREPA informed Debtor of its position that it believed that the consigned funds were PREPA's property and would be taken by PREPA and applied to the Debtor's pre-petition obligation.

32. Also on April 13, 2011 the Debtor sent PREPA a letter advising of the Debtor's interest in the consigned funds, and the consequences of its actions if the funds were withdrawn by PREPA. (*See* Letter of April 13, 2011, Exhibit 1, supra).

33. Rather than respond to Debtor's letter, PREPA submitted late on April 15, 2011 two motions to "Clarify this Court's Order" regarding the extension of the automatic stay and an Opposition to the Debtor's § 366 motion. (*See* Case No. 11-2270, Dkt. Nos. 71 and 74).

34. Contemporaneous with the filing of motions in this Court and without seeking any prior authorization from the Bankruptcy Court, PREPA moved on "an urgent" basis to withdraw the consigned funds from State Court. (*See* Exhibit 2, PREPA's State Court Motion).

---

believes that the full terms of the negotiations between the parties must be disclosed. Further, PREPA has already disclosed terms of the negotiation in its Opposition to the Debtor's 366 Motion.

35.  PREPA filed these motions to get property of the estate, the consigned $400,000, without moving to lift the Automatic Stay and without alerting the Debtor despite representing to the Debtor that negotiations between the parties were ongoing.[2]

36.  By attempting to collect the consigned funds property of the estate, or property over which the estate has an interest, without seeking the prior permission of this Court to act against the consigned funds, the Debtor contends that PREPA's actions violate the automatic stay.

## IV.  FIRST CAUSE OF ACTION – DECLARATORY JUDGMENT THAT PREPA HAS VIOLATED THE AUTOMATIC STAY

37.  All of the paragraphs above are herein incorporated as if fully stated as set forth above.

38.  The funds consigned by the Debtor in Puerto Rico Court are property of the Estate.

39.  As of the date of the Bankruptcy Petition, March 18, 2011, the $400,000 that the Debtor had consigned to the Puerto Rico Court of First Instance in Caguas, Case Number ECD 2002-0679 (404), for payment of pre-petition electrical bills to PREPA was not accepted, withdrawn or collected by PREPA.

---

[2]The Debtor must note the breach of professionalism here by PREPA. While the Debtor was proceeding in good faith and explaining how the Bankruptcy Code defines property of the estate, PREPA sought an advantage against the Debtor by filing the motions late on a Friday night without ever informing the Debtor that PREPA was in fact terminating negotiations and seeking litigation instead. PREPA's actions here not only have breached professional standards and caused more work for this Court and the Puerto Rico Court, they violate the Automatic Stay.

40. Under Puerto Rico law, a party who consigns funds to a court may withdraw the money consigned so long as the creditor who was supposed to receive the funds has yet to withdraw them. *See* 31 L.P.R.A. § 3184.

41. Since the funds were not accepted, withdrawn or collected by PREPA as of the date of the Bankruptcy petition, the Debtor has a legal interest in the funds and the legal right to withdraw the funds.

42. The Bankruptcy Code grants the Debtor in Possession "all legal or equitable interests of the debtor in property as of the commencement of the case." *See* 11 USC § 541.

43. Further, this definition of property of the estate in the Bankruptcy Code must be interpreted very broadly. *See e.g. U.S. v. Whiting Pools,* 462 U.S. 198, 204-05 (1983).

44. Accordingly, since the Debtor has a legal right to withdraw the money, that legal right has now fully vested with the Debtor in Possession as property of the estate.

45. In its motion contesting this legal right, PREPA makes reference to the fact that the School of Medicine is listed as the consignor in the proceedings. This assertion by PREPA is falsely formalistic and not reflective of the facts known to it, by the parties and confirmed in writing by the debtor to PREPA prior to its actions to take over the funds. The Debtor, as the primary consumer of electricity and primary party responsible for paying the electrical fees, gave the money to the School of Medicine for the consignment. The School of Medicine made the formal consignment because of the unique circumstances surrounding the single name on the electrical account. Regardless, the evidence shows that the Debtor is

the party who consigned the funds and not the School of Medicine. (*See* Exhibit 1).

46. The consigned funds are the property of the estate.

47. The provisions of the Bankruptcy Code governing the automatic stay prevent "any act to collect, assess, or recover a claim against the Debtor that arose before the commencement of the case." 11 USC § 362(a)(6).

48. Once Debtor filed its petition under Chapter 11 of the Bankruptcy Code, the automatic stay provision of 11 USC § 362(a) came into force. Indeed, "the stay springs into being immediately upon the filing of a bankruptcy petition: because the automatic stay is exactly what the name implies–automatic–it operates without the necessity for judicial intervention." *Sunshine Dev. Inc., v. FDIC*, 33 F.3d 106, 113 (1st Cir. 1994).

49. The automatic stay is "among the most basic of debtor protections under bankruptcy." *Midlantic Nat'l Bank v. New Jersey Dep't of Envtl. Protection*, 474 U.S. 494, 503 (1986). To vindicate this protection, courts are "rigorous" in punishing violations of the automatic stay as the "stay is a fundamental protection for all parties affected by the filing of a petition in bankruptcy." *Soares v. Brockton Credit Union (In re Soares)*, 107 F.3d 969, 977 (1st Cir. 1997).

50. Accordingly, PREPA's effort to reclaim the consigned funds, and any future effort by PREPA to retrieve the consigned funds without first gaining the consent and approval of this Court, is a violation of the Automatic Stay.

51. Under 28 USC § 2201 and under Bankruptcy Rule 7001(9), the Debtor hereby requests that this Court issue a declaratory judgment finding that PREPA's

emergency motion to retrieve the consigned funds is a violation of the Automatic Stay and any similar future effort by PREPA to retrieve the funds without the approval of this Court is a violation of the Automatic Stay.

## V. SECOND CAUSE OF ACTION – WILLFUL VIOLATION OF THE AUTOMATIC STAY, 11 USC § 362

*A. PREPA's "URGENT" STATE COURT MOTION TO GAIN CUSTODY OF THE CONSIGNED FUNDS COMBINED WITH ITS "MOTION TO CLARIFY" AN ORDER OF THIS COURT DEMONSTRATE A WILLFUL VIOLATION OF THE AUTOMATIC STAY*

52. Here, the Debtor notified PREPA on April 13, 2011 of its legal right to withdraw the consigned funds and notified PREPA that this fact rendered the consigned funds property of the estate. (*See* Exhibit 1, Letter of April 13).

53. Despite having knowledge of the Debtor's Bankruptcy, knowledge of the law that the consigned funds were property of the estate, and despite being involved in direct negotiations with the Debtor, PREPA moved to take property of the estate without moving to lift the Automatic Stay by filing an urgent motion in Puerto Rico Court. (*See* Exhibit 2).

54. In instances where a creditor willfully violates the automatic stay, the Bankruptcy Code requires that the Debtor receive actual damages, attorney fees, and, in appropriate circumstances, punitive damages. *See* 11 USC § 362(k) and 11 USC § 105 for violating the injunction of the Automatic Stay.

55. For the purposes of the Bankruptcy Code, "a violation of the automatic stay is 'willful' so long as the creditor had notice of the bankruptcy filing. As used in § 362 of the Bankruptcy Code 'willful', unlike many other contexts, *does not require any specific intent*. A violation of the automatic stay can be willful when

the creditor knew of the stay and violated the stay by an intentional act." *In re Glanzer*, 2008 Bankr. LEXIS 1141 * 4 (Bankr.N.D. Ohio, 2008). *See also Johnston Envtl. Corp. v. Knight (In re Goodman)*, 991 F.2d 613, 618 (9th Cir. 1993).

56. Here, there can be no doubt about PREPA's intent to harm the Debtor in violation of the stay.

57. Moreover, PREPA further compounds its willfulness to violate the Automatic Stay in its Motion to Clarify this Court's Order. (*See* Case No. 11-2270, PREPA Dkt. No. 74). In its motion to clarify this Court's Order, PREPA fails to state that its true reason for requesting the "clarification" is to move against the $400,000 consigned in State Court. This is a deliberate lack of candor by PREPA.

58. In its "Motion to Clarify," PREPA is silent about its intent to take the consigned funds. Nevertheless, the only purpose of PREPA's "motion to clarify" is to allow the state court proceedings to advance far enough so that PREPA may take the consigned funds. PREPA's actions here are not only violative of the Automatic Stay–they are duplicitous.

59. Accordingly, the Debtor requests this Court to find that PREPA's action to take the consigned funds is a violation of the Automatic Stay and that this Court sanction PREPA under 11 USC § 362 and 11 USC §105 in an amount not less than $400,000 and award costs, attorneys' fees, and any other award this Court deems proper to sanction and deter such conduct from occurring again.

WHEREFORE, the Debtor requests this Court grant the Debtor the following relief:

a. That the bankruptcy estate has an interest in the funds consigned in the Puerto Rico Court of First Instance in Caguas (Case No. ECD 2002-0679 (404)) and as such these funds are property of the estate;

b. That PREPA's "urgent" effort to take those funds to collect on a pre-petition obligation without seeking an Order from this Court to lift the Automatic Stay is a violation of the Automatic Stay;

c. That PREPA's "urgent" action to take the consigned funds was a willful violation of the stay;

d. That PREPA's lack of candor in its Motion to Clarify this Court's Order regarding the extension of the Automatic Stay to the School of Medicine is sanctionable and further demonstrative of a willful violation of the automatic stay;

e. That this Court issue a declaratory judgment finding that PREPA's actions to date violate the Automatic Stay and that any future action by PREPA to retrieve the consigned funds without first receiving authority from this Court to lift the automatic stay are a violation of the Automatic Stay;

f. That this Court sanction PREPA for its willful violation of the Automatic Stay and sanction its actions in an amount not less than $400,000, plus all attorneys' fees, and award Debtor any other remedy that this Court deems proper under 11 USC 362 and 11 USC § 105.

**Respectfully Submitted,** In San Juan, Puerto Rico this 26th Day of April, 2011.

**C. CONDE & ASSOC.**

Carmen Conde Torres, Esq.
USDC 207312
254 San José Street, 5th Floor
Old San Juan, Puerto Rico  00901
Telephone:  787-729-2900
Facsimile:  787-729-2203



## C. CONDE & ASSOC.
LAW OFFICES
254 SAN JOSÉ STREET
5ᵀᴴ FLOOR
SAN JUAN, PUERTO RICO 00901-1523
TELEPHONE (787) 729-2900
TELECOPIER (787) 729-2203
E-mail: condecarmen@microjuris.com
cconde@condelaw.com

By Email

April 13, 2011

Ivan Castro, Esq.
Aldorando Lopez & Bras
16 Rd. 199, Ste. 400
Guaynabo, PR 00969

VIA ELECTRONIC MAIL

Re:    Consignment of Funds in Puerto Rico Court, Case No. ECD2002-0679(404);
        *In re San Juan Bautista Med. Ctr. Corp.,* Bankr. Case No. 11-2270

Dear Mr. Castro:

Pursuant to our conference call today, we hereby state our position as to the rights of the San Juan Bautista Medical Center to the funds deposited in state court and its right to cede them to PREPA to complete the $650,000 offered as adequate assurance of the Medical Center's future performance in the payment for electrical services through to May 1, 2011.

The amount of $400,000 would come from the money presently consigned in the Puerto Rico Court. (Case No. ECD2002-0679(404). Even though the deposit was initially made by the School of Medicine, the Medical Center paid the School of Medicine for the deposits since it is responsible for 85% of the fees for electrical services. Attached you will see two payments ($100,000 each) paid to the School by the Medical Center and the loan the Medical Center obtained from Cooperativa Oriental to complete the $400,000. The $400,000 are also included as property of the Medical Center in its bankruptcy schedules.

With respect to transferring the money on consignment with the Puerto Rico Court, under Puerto Rico law a debtor may withdraw money consigned to a court so long as the creditor has yet to withdraw the funds. *See* 31 L.P.R.A. § 3184. Accordingly, the legal

right of the debtor to withdraw the funds gives rise to a "property right" protected under the Bankruptcy Code and is subject to the provisions of the automatic stay.

Property of the estate is defined as "all legal or equitable interests of the debtor in property as of the commencement of the case." *See* 11 USC § 541. Moreover, courts are required to interpret this definition of "property of the estate" very broadly. *See e.g. U.S. v. Whiting Pools,* 462 U.S. 198, 204-05 (1983). As of the date of commencement of the Bankruptcy Case, the Medical Center had the right to withdraw the consigned funds since PREPA had yet to take possession of the funds. Therefore, those funds are indeed property of the estate.

Independent from what is state above, it is the Debtor in Possession's intent to use this money to pay PREPA. The fact is that these funds shall be used as part of the payment and/or bond for post-petition obligations. PREPA's failure to withdraw these funds prior to the commencement of Bankruptcy proceedings prevents the Debtor from using these funds to pay pre-petition obligations. The only alternative, and the best alternative, is to use these consigned funds to pay PREPA as part of the Debtor's post-petition obligation. Not only will the Debtor pay the $400,000 in consigned funds but it will also pay an additional $250,000 already identified.

We believe it is of prime importance to conclude the joint stipulation with PREPA as soon as possible to ensure that PREPA receives as soon as possible the payment and that the Medical Center receives the services throughout the duration of the Bankruptcy proceedings. If you have any questions on this, please contact us.

Sincerely,

Carmen Conde, Esq.

# Scotiabank

**MANAGER CHECK**

101-280
215

0106 No. **006483**

DATE 16 de diciembre 2009

SCOTIABANK DE
65425

TELLER
CAGUAS

TO THE
DER OF __ E____ de Medicina San Juan Bautista

$ **100,000.00**

M OF _____ THE ___ 100000********

DOLLARS

**CAGUAS BRANCH**

**NON NEGOTIABLE**

VILLA DEL CARMEN SHOPPING CENTER
CARRETERA #1
CAGUAS, P.R. 00725

PURCHASER Sor Juan Bautista

ACCOUNT NO. 8003086

AUTHORIZED NUM.

AUTHORIZED OFFICER

AUTHORIZED OFFICER

BRANCH COPY

CREDIT COMM. G/L No. _____

DB            10 -

_M_
_Cindy_

Paso a Escuela
pn depósito
de Dic 2009



**COOP ORIENTAL**

P. O. Box 876
Humacao, PR 00792-0876

TEL 787.852.0964
FAX 787.850.0650
www.cooporiental.com

  

NOTICE:
SEE REVERSE SIDE FOR IMPORTANT INFORMATION REGARDING YOUR RIGHTS TO DISPUTE BILLING ERRORS OR QUESTIONS ABOUT YOUR ELECTRONIC TRANSFERS

COSSEC
$250,000

TEMP-RETURN SERVICE REQUESTED
>00296 6496696 001 092041 4582081001

SAN JUAN BAUTISTA MEDICAL CENTER, I
PO BOX 4964
CAGUAS, PR 00726

Member#: 2304022
Statement Date: 07/31/2010
Page#: 1
Mail Code:

## Type: 11 - CHEQUES COMERCIAL

| TRAN | POST | DESCRIPTION | AMOUNT | BALANCE | TRAN | POST | DESCRIPTION | AMOUNT | BALANCE |
|------|------|-------------|--------|---------|------|------|-------------|--------|---------|
| 07/01 | | PREVIOUS BALANCE | | 59410.48 | 07/28 | 07/28 | Chk#3 | 2500.00 | 185440.00 |
| 07/01 | 07/01 | To Mb #2303888 - Loan #1 | 4078.62 | 55331.86 | 07/29 | 07/29 | Chk#2 | 7617.33 | 177822.67 |
| 07/01 | 07/01 | Deposit (CHEQUES RECIBIDOS) | 300000.00 | 355331.86 | 07/30 | 07/30 | Chk#20 | 5380.00 | 172442.67 |
| | | | | | 07/30 | 07/30 | Deposit (CHEQUES RECIBIDOS) | 56576.08 | 229018.75 |
| 07/02 | 07/02 | Chk#1 | 100000.00 | 255331.86 | 07/30 | 07/30 | Deposit (CHEQUES RECIBIDOS) | 11305.80 | 240324.55 |
| 07/02 | 07/02 | Chk#2 | 10.00 | 255321.86 | | | | | |
| 07/06 | 07/06 | Chk#1 | 70000.00 | 185321.86 | 07/30 | 07/30 | Share W/D (CARGOS - PAGO) | 5.00 | 240319.55 |
| 07/08 | 07/08 | Deposit (CHEQUES RECIBIDOS) | 31041.85 | 216363.71 | 07/30 | 07/30 | Chk#1 | 6998.25 | 233321.30 |
| 07/10 | 07/10 | To Mb #2303888 - Loan #1 | 4078.62 | 212285.09 | 07/30 | 07/30 | Chk#13 | 1767.00 | 231564.30 |
| | | | | | 07/30 | 07/30 | Chk#16 | 11716.00 | 219836.30 |
| 07/12 | 07/12 | Cheque Pagado | 200000.00 | 12285.09 | 07/30 | 07/30 | Chk#10 | 1041.60 | 218794.70 |
| 07/16 | 07/16 | Deposit (CHEQUES RECIBIDOS) | 198159.91 | 210445.00 | 07/30 | 07/30 | Chk#14 | 3092.25 | 215702.45 |
| 07/21 | 07/21 | Chk#1 | | | 07/31 | 07/31 | Chk#12 | 4996.43 | 210706.02 |
| 07/23 | 07/23 | Share W/D (CARGOS - PAGO) | 20500.00 | 189945.00 | 07/31 | 07/31 | Chk#15 | 3938.55 | 206767.47 |
| | | | 5.00 | 189940.00 | 07/31 | 07/31 | Chk#18 | 5460.40 | 201299.07 |
| 07/23 | 07/23 | Chk#9 | 2000.00 | 187940.00 | 07/31 | 07/31 | Intereses Pagados | 1172.50 | 200126.57 |
| | | | | | 07/31 | | NEW BALANCE | 198.62 | 200325.19 |
| | | | | | | | | | 200325.19 |

*** ANNUAL PERCENTAGE YIELD EARNED: 1.26 % FOR A PERIOD OF 31 DAYS ***

### CHECK NUMBER RECAP

| Check# | Amount | Check# | Amount | Check# | Amount | Check# | Amount | Check# | Amount |
|--------|--------|--------|--------|--------|--------|--------|--------|--------|--------|
| 0 | 200000.00 | ** 1 | 6998.25 | 9 | 2000.00 | 14 | 4996.43 | 18 | 1172.50 |
| 1 | 100000.00 | ** 2 | 10.00 | 12 | 3092.25 | 15 | 5468.40 | 20 | 5380.00 |
| 1 | 70000.00 | 2 | 7617.33 | 13 | 3938.55 | 16 | 11716.00 | | |
| ** 1 | 20500.00 | 3 | 2500.00 | 13 | 1767.00 | 17 | 1041.60 | | |

**ITEM NUMBERS NOT CONSECUTIVE

### SUMMARY

| Description | Count | Debits | Credits | Description | Count | Debits | Credits |
|-------------|-------|--------|---------|-------------|-------|--------|---------|
| Share Draft Checks | 18 | 448200.31 | .00 | ATM Transactions | 0 | .00 | .00 |
| EFT Transactions | 0 | .00 | .00 | Electronic Checks | 0 | .00 | .00 |
| Voice Transactions | 0 | .00 | .00 | Other Withdrawals | 4 | 8167.24 | .00 |
| Deposits | 6 | .00 | 597282.26 | | | | |
| | | Balance Forward: | 59410.48 | | | | |
| | | Net Change: | 140914.71 | | | | |
| | | New Balance: | 200325.19 | | | | |

### Member Year-to-Date Totals

YTD Taxable Dividends: 0.00
YTD Interest: 227.23
YTD Charges: 0.00

Aprovecha la oferta del Vera Coop.. Este es el momento de crear esta cuenta donde ganaras interes por ahorrar y no cuesta nada. Planifica tus vacaciones con el plan de ahorros " VERA COOP" Visitanos o llamanos..para orientarte!!!

*Para Deposito de 7/1/10.*

B6D (Official Form 6D) (12/07)

In re **SAN JUAN BAUTISTA MEDICAL CENTER, CORP.**

Debtor

Case No. 1-002270 BKT

(If known)

# SCHEDULE D - CREDITORS HOLDING SECURED CLAIMS

State the name, mailing address, including zip code and last four digits of any account number of all entities holding claims secured by property of the debtor as of the date of filing of the petition. The complete account number of any account the debtor has with the creditor is useful to the trustee and the creditor and may be provided if the debtor chooses to do so. List creditors holding all types of secured interests such as judgment liens, garnishments, statutory liens, mortgages, deeds of trust, and other security interests.

List creditors in alphabetical order to the extent practicable. If a minor child is a creditor, state the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See 11 U.S.C §112 and Fed. R. Bankr. P. 1007(m). If all secured creditors will not fit on this page, use the continuation sheet provided.

If any entity other than a spouse in a joint case may be jointly liable on a claim, place an "X" in the column labeled "Codebtor," include the entity on the appropriate schedule of creditors, and complete Schedule H - Codebtors. If a joint petition is filed, state whether husband, wife, both of them, or the marital community may be liable on each claim by placing an "H," "W," "J," or "C" in the column labeled "Husband, Wife, Joint, or Community."

If the claim is contingent, place an "X" in the column labeled "Contingent." If the claim is unliquidated, place an "X" in the column labeled "Unliquidated." If the claim is disputed, place an "X" in the column labeled "Disputed." (You may need to place an "X" in more than one of these three columns.)

Total the columns labeled "Amount of Claim Without Deducting Value of Collateral" and "Unsecured Portion, if Any" in the boxes labeled "Total(s)" on the last sheet of the completed schedule. Report the total from the column labeled "Amount of Claim Without Deducting Value of Collateral" also on the Summary of Schedules and, if the debtor is an individual with primarily consumer debts, report the total from the column labeled "Unsecured Portion, if Any" on the Statistical Summary of Certain Liabilities and Related Data.

☐ Check this box if debtor has no creditors holding secured claims to report on this Schedule D.

| CREDITOR'S NAME, MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER *(See Instructions Above.)* | CODEBTOR | HUSBAND, WIFE, JOINT OR COMMUNITY | DATE CLAIM WAS INCURRED, NATURE OF LIEN, AND DESCRIPTION AND VALUE OF PROPERTY SUBJECT TO LIEN | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM WITHOUT DEDUCTING VALUE OF COLLATERAL | UNSECURED PORTION, IF ANY |
|---|---|---|---|---|---|---|---|---|
| ACCOUNT NO. 7340026649 <br><br> BANCO POPULAR DE PUERTO RICO <br> PO BOX 362708 <br> SAN JUAN, PR 00936 | X | | Lien: LOAN <br> Security: ACCOUNT RECEIVABLES, INVENTORY, GRAVAMEN MOBILIARIO <br><br><br> VALUE $ 17,970,739 | | | | 661,386 | 0 |
| ACCOUNT NO. <br><br> COOP. ORIENTAL <br> PO BOX 876 <br> HUMACAO, PR 00792-0876 | | | Security: LOAN FOR PREPA DEPOSITED IN COURT GUARANTEED/BOND <br><br><br> VALUE $ 100,000 | | | | 160,000 | 60,000 |
| ACCOUNT NO. <br><br> ESCUELA DE MEDICINA SAN JUAN BAUTISTA <br> PO BOX 4968 <br> CAGUAS, PR 00725 | | | Lien: LOAN <br> Security: ACCOUNT RECEIVABLES <br><br><br> VALUE $ 17,970,739 | | | | 2,500,000 | 0 |

0 continuation sheets attached

| | | |
|---|---|---|
| Subtotal ► <br> (Total of this page) | $ 3,321,386 | $ 60,000 |
| Total ► <br> (Use only on last page) | $ 3,321,386 | $ 60,000 |
| | (Report also on Summary of Schedules) | (If applicable, report also on Statistical Summary of Certain Liabilities and Related Data.) |

<div style="writing-mode: vertical">Bankruptcy2010 ©1991-2010, New Hope Software, Inc., ver. 4.5.5-755 - 31846-302Y-05610</div>

Exhib. 2

| | |
|---|---|
| **AUTORIDAD DE ENERGÍA ELÉCTRICA** | **CASO NÚM.: E CD 2002-0679** |
| Demandante | |
| v. | |
| **ESCUELA DE MEDICINA SAN JUAN BAUTISTA ET ALS** | **SOBRE: COBRO DE DINERO** |
| Demandados | |

### MOCIÓN <u>URGENTE</u> PARA SOLICITAR LIBERACIÓN DE FONDOS CONSIGNADOS

**AL HONORABLE TRIBUNAL:**

Comparece la parte demandante, Autoridad de Energía Eléctrica, por conducto de la representación legal que suscribe y, muy respetuosamente expone, alega y solicita:

Que el pasado 30 de noviembre de 2009 el Tribunal ordenó a la parte demandada Escuela de Medicina San Juan Bautista a pagar cien mil dólares ($100,000) mensuales a la Autoridad de Energía Eléctrica.

Que en cumplimiento con dicha orden la Escuela de Medicina San Juan Bautista consignó a favor del Honorable Secretario del Tribunal la cantidad de cuatrocientos mil ($400,000) desglosado como sigue:

| Fecha | Cantidad | Cheque Número[1] |
|---|---|---|
| 9 de diciembre de 2009 | $100,000.00 | ------------------ |
| 19 de enero de 2010 | $100,000.00 | 1002 |
| 3 de marzo de 2010 | $100,000.00 | 3440824 |
| 2 de julio de 2010 | $100,000.00 | 6097210 |

La aquí compareciente muy respetuosamente solicita al Honorable Tribunal la liberación de dichos fondos y cualesquiera otros que estuvieren consignados a favor de la Autoridad de Energía Eléctrica y los intereses acumulados hasta la fecha en que se realice la liberación.

**CERTIFICO:** Que en el día de hoy se ha enviado, por correo ordinario, copia fiel y exacta del presente escrito a: Lcda. Blanca H. Bonhomme Meléndez, 1864 Ave. Ponce de León Suite 2, San

Juan, Puerto Rico 00909; Lcdo. Jorge R. Ruiz Pabón, PO Box 363928, San Juan, Puerto Rico

00936-3928; Lcdo. Eliseo Roques Arroyo, Ste. 216, PMB 298, B5 Tabonuco St. Guaynabo, Puerto

Rico 00968-3029; Lcda. Miglisa L. Capó Suria, First Health Plan, Inc. & International Medical Card,

Inc., Departamento Legal, PO Box 3180, Carolina, Puerto Rico  00984; Lcdo. Jaime J. Ortiz

Rodríguez, 363928, San Juan, Puerto Rico 00936-3928; Lcda. Jelka L. Duchesne Sanabria, Ste. 216,

PMB 298, B5 Tabonuco St. Guaynabo, Puerto Rico 00968-3029; Lcdo. Wilbert Méndez Marrero,

PO Box 16636, San Juan, Puerto Rico 00908-6636; Departamento de Salud, Secretario de Salud, PO

Box 9020192, San Juan, Puerto Rico 00936; Lcda. Tanya García Ibarra,  PO Box 9020192, San Juan,

Puerto Rico 00902-0192; Lcdo. Luis J. Hernández Ortiz; 61 Calle Barceló, Suite 1, Villalba, Puerto

Rico 00766.

**RESPETUOSAMENTE SOMETIDA.**

En Guaynabo, Puerto Rico, hoy día 15 de abril de 2011.

**ALDARONDO & LÓPEZ BRAS**
Abogados de la Autoridad de Energía Eléctrica
16 Avenida Las Cumbres, Suite 400
Guaynabo, Puerto Rico 00969
Tel. 474-5447, Fax 474-5451
E-mail: alblegal.net

**ELIEZER ALDARONDO ORTIZ**
**R.U.A. NÚM. 5802**

**ANA B. CASTRO ÁLVAREZ**
**R.U.A. NÚM. 13680**

**CAROLINA GUZMÁN TEJADA**
**R.U.A. NÚM. 17260**

---

[1] Se acompañan copia de los cheques, excepto del cheque consignado el 9 de diciembre de 2009.

| | |
|---|---|
| AUTORIDAD DE ENERGIA ELECTRICA | CIVIL NÚMERO: ECD2002-0679 (404) |
| Demandante | |
| | Consolidado con |
| v. | EAC2009-0219 |
| ESCUELA DE MEDICINA SAN JUAN BAUTISTA, Inc. | |
| Demandado | SOBRE: |
| ESCUELA DE MEDICINA | |
| SAN JUAN BAUTISTA, Inc. | COBRO DE DINERO/ |
| | ACCIÓN DE NIVELACIÓN |
| Demandante | E INCUMPLIMIENTO |
| | CONTRACTUAL |
| v. | |
| E.L.A., *et als*. | |
| Demandados | |

MOCION EN CUMPLIMIENTO DE ORDEN CONSIGNANDO FONDOS

AL HONORABLE TRIBUNAL :

COMPARECE, la Escuela de Medicina San Juan Bautista, Inc., por conducto de la representante legal que suscribe, y muy respetuosamente Expone, Alega y Solicita:

1. Conforme lo ordenado por el Honorable Tribunal, el pasado 30 de noviembre de 2009 quedaron en suspenso los embargos a los planes médicos a favor de la Autoridad de Energía Eléctrica hasta la fecha de la próxima vista transaccional fechada para el 4 de marzo de 2010. Por su parte, ordenó a la Escuela de Medicina San Juan Bautista a pagar $100,000 mensuales a la A.E.E., cantidad que sumada a lo que hasta el momento ha sido embargado, cubriría parte sustancial de lo adeudado por concepto de los servicios corrientes de energía eléctrica.

2. En cumplimiento con la Orden del Honorable Tribunal, se consignan por medio de la presente Moción, la cantidad de $100,000.00 a favor del Honorable Secretario del Tribunal con cheque número ___1002_____ (Véase Anejo), que corresponde al pago mensual para el mes corriente por el servicio de energía eléctrica.

POR TODO LO CUAL, muy respetuosamente solicitamos que este Honorable Tribunal quede informado de la consignación de los fondos, así como de las intenciones de suspensión del servicio, publicado por la AEE.

CERTIFICO que en el día de hoy expedimos por correo copia de la presente Moción a la Lcda. Tania García Ibarra, Departamento de Justicia, PO Box 9020-0192, San Juan, Puerto Rico 00907; Lcdo. Jorge Rafael Ruiz Pabón, Lcdo. Carlos M. Ramos Aquino, Lcdo. Jorge Mafuz Lizardi, Lcdo. Francisco Santos Rivera, Lcdo. Jaime Ortiz Rodríguez, PO Box 363928, San Juan, Puerto Rico 00936-3928; Lcdo. Luis Javier Hernández Ortiz, Calle Barceló Núm. 61 Suite 1, Villalba, Puerto Rico 00766; Lcda. Blanca H. Bonhomme Meléndez, 1864 Ave. Ponce de León Suite 2, San Juan, Puerto Rico 00909; Lcda. Niurka Adorno González, Departamento Legal, PO Box 3180, Carolina, Puerto Rico 00984; Lcdo. Wilbert Méndez Marrero, PO Box 16636, San Juan, Puerto Rico 00908-6636

RESPETUOSAMENTE SOMETIDO. En Guaynabo, Puerto Rico, a 19 de enero de 2010.

EDGE LEGAL STRATEGIES, PSC
B5 Calle Tabonuco
PMB 298 Suite 216
Guaynabo, Puerto Rico 00968-3029
Tel. 787.522.2000 / Fax. 787.522.2010

_____
Eliseo Roques Arroyo
Número Abogado 12493

_____
Manuel Ayala Morales
Número Abogada 12113

# C. CONDE & ASSOC.
### LAW OFFICES
SAN JOSE STREET #254
SUITE 5
SAN JUAN, PR 00901-1253
TEL: (787) 729-2900
FAX: (787) 729-2203

**URGENT**

April 19, 2011

**VIA ELECTRONIC MAIL**

Ivan Castro, Esq.
Email: ico.alblegal@gmail.com

Re: *In re San Juan Bautista Med. Ctr. Corp.*
**Bankr. Case No. 11-2270**

Dear Mr. Castro:

We have received copy of the urgent motion filed by PREPA on April 15, 2011, requesting the withdrawal of the amount of $400,000 consigned in the Puerto Rico Court. (Case No. ECD2002-0679(404). We had informed you in the letter sent April 13, 2011 that said funds were property of Debtor's bankruptcy estate pursuant to the provisions of Section 541 of the Bankruptcy Court (11 USC 541) and that they were part of the proposal made in order to provide adequate assurance to PREPA within the bankruptcy case for post petition services.

Nevertheless, PREPA in disregard to our letter, the provisions of the Bankruptcy Code, of the automatic stay and the ongoing good faith negotiations with the Debtor, filed the motion requesting authorization to withdraw these funds. This action is a clear violation of the provisions of the automatic stay provided by Section 362 of the Bankruptcy Code, 11 USC 362. We herein request that PREPA withdraw the motion filed in the state court case in order to avoid unnecessary litigation.

Furthermore, the Debtor was under the impression that the parties were still negotiating in good faith as of the date of the filing of the state court motion and recent motion in the Bankruptcy Court. We had provided PREPA with our proposal for the deposit in the total amount of $650,000.00, which included the amounts consigned in the state court and an additional payment of $250,000.00. PREPA had not provided a response to our proposal. As of this date, we have not received a formal response to our proposal. PREPA instead

proceeded to file the motion to withdraw the consigned funds in violation of the automatic stay.

We reaffirm that under Puerto Rico law a debtor may withdraw money consigned to a court so long as the creditor has yet to withdraw the funds. *See* 31 L.P.R.A. § 3184. Accordingly, the legal right of the debtor to withdraw the funds gives rise to a "property right" protected under the Bankruptcy Code and is subject to the provisions of the automatic stay. As of the date of commencement of the Bankruptcy Case, the Medical Center had the right to withdraw the consigned funds since PREPA had yet to take possession of the funds. Therefore, those funds are indeed property of the estate. Any action by PREPA without leave of the Bankruptcy Court is in clear violation of the automatic stay provisions.

This afternoon we contacted attorney Carolina Guzmán Tejada, state court counsel for PREPA in order to discuss this matter. We informed her that the Debtor wishes to resolve this matter in the most amicable fashion and without the need to incur in additional expenses and litigation. Nevertheless, if PREPA does not withdraw voluntarily the motion filed in the state court case before 3:00 PM tomorrow, we will have no other alternative than to request the appropriate relief from the Bankruptcy Court.

Awaiting your prompt response I remain,

Sincerely,

Carmen D. Conde Torres

cc: Carolina Guzmán Tejeda, Esq.